UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEAL A. HANN, JR.,

       Plaintiff,

v.                                                                      Case No. 13-CV-11934
                                                   Honorable Denise Page Hood

NESTLE USA, INC., a foreign corporation,
And DREYER'S GRAND ICE CREAM
COMPANY, d/b/a NESTLE DSD CO., a
foreign corporation,

       Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE COMPLAINT PURSUANT TO RULE 12(B)(6) [#10] AND DISMISSING ACTION

This matter comes before the Court pursuant to Defendants' Motion to Dismiss the Complaint Pursuant to Rule 12(b)(6). **[Docket No. 10, filed June 14, 2013]** For the reasons stated below, Defendants' motion is **GRANTED**.

**I.    BACKGROUND**

On April 30, 2013, Plaintiff Neal A. Hann, Jr. filed a complaint against Defendants Nestle USA, Inc. and Nestle Dreyer's Ice Cream Company (hereinafter "Defendants") alleging (1) failure to accommodate and (2) termination in violation

1

of the Persons with Disabilities Civil Rights Act (the "Act"), Mich. Comp. Laws 37.1201. Plaintiff states that on October 22, 2011, he was involved in an automobile accident which resulted in hospitalization. **[Compl. ¶ 5]** While in the hospital, Plaintiff learned that he had a medical condition, hypertrophic cardiomyopathy, a condition in which the heart muscle is abnormally large excessively thick. **[Compl. ¶ 5-6]** Due to this condition, Plaintiff was advised to avoid excessive lifting, pulling, or pushing and to avoid any physical activity that would lead him to the point of exhaustion. **[Compl. ¶ 7]** Plaintiff was approved for leave from employment under the Family Medical Leave Act up until January 13, 2012 and on April 10, 2012, Plaintiff informed Defendants that he was physically able to return to work, though he would have to work with restrictions per doctor's orders. **[Compl. ¶ 8-9]**

On May 25, 2012, Defendants received a completed Fitness-for-Duty Return to Work Release form from Plaintiff's physician which indicated that Plaintiff could not list over 15 pounds nor push or pull more than 50 pounds. **[Compl. ¶ 10]** In pertinent part, Plaintiff's job description states that a Pre-Sales Representative should be able to constantly life and/or carry 1-5 pounds and occasionally lift and/or carry (15%) up to 25 pounds. **[Def. Ex. at 5]** The Pre-

Sales Representative should also occasionally be able to push and/or pull up to 15-35 pounds and seldom 35-75 pounds. **[Def. Ex. at 5]** However, Plaintiff's doctor limited Plaintiff's lifting to 15 pounds and pushing and/or pulling to occasionally be 20 pounds and seldom 50 pounds. **[Def. Ex. at 2-3]** Plaintiff requested Defendants to allow him to return to work in an accommodated manner.

On June 13, 2012, Defendants rejected Plaintiff's request indicating that his requested accommodations were not in line with the requirements of his job as stated in his job description. **[Compl. ¶ 12]** Specifically, Defendants told Plaintiff that they "may not be able to accommodate the restriction given by [his] physician in [his] position or any other position within DSD." On August 1, 2013, Defendants contacted Plaintiff again and advised him that after "exhaust[ing] all possible options," they determined that the Company could not "reasonable accommodate [Plaintiff's] restrictions." Plaintiff was also informed that his employment would be terminated as of August 17, 2013. In a letter dated August 7, 2013, Plaintiff's counsel requested again that Defendants attempt to provide "reasonable accommodation due to [Plaintiff's] condition of which [they] were aware" and notified Defendants that they were "many devices . . . available which would aid an employee to lift/push/pull heavy object, including powerized handcarts and lifts . . . ." Plaintiff also noted that another employee could be used

3

in those "minimal occasions" where Plaintiff would have to life, push, or pull object in excess of his restrictions. Plaintiff, through counsel, requested that the accommodations he suggested be provided and told Defendants that if they failed to do so and terminated Plaintiff "without fully engaging in the interactive process required under the American with Disabilities Act, litigation [would] follow." In response, Defendants told Plaintiff that they would be "looking into [the] matter as quickly as possible and no employment action [would] be taken during [that] time." Following cooperative efforts between Plaintiff and Defendants, Defendants rejected Plaintiff's request. On December 28, 2012, Defendants contacted Plaintiff and told him, "We are not able to feasibly accommodate [Plaintiff's] pushing, pulling, lifting and carrying restrictions." Defendants decided not to allow Plaintiff to return to work and terminated his employment.

## II. ANALYSIS

Defendants brings this motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the Court reviews the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs*, 510 F.3d 631, 634 (6th Cir. 2007). To survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on

its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009).

To establish a *prima facie* case of discrimination under the PWDCRA, Plaintiff must show the following three elements: "(1) []he is 'disabled' as defined by the statute, (2) the disability is unrelated to the plaintiff's ability to perform the duties of a particular job, and (3) the plaintiff has been discriminated against in one of the ways set forth in the statute." *Donahoo v. Master Data Ctr.*, 282 F. Supp. 2d 540, 548 (E.D. Mich. 2003) (citing *Chiles v. Machine Shop, Inc.*, 238 Mich. App. 462, 606 N.W.2d 398, 405 (1999)). The Act states that

> [i]n an action brought pursuant to this article for a failure to accommodate, the person with a disability shall bear the burden of proof. If the person with a disability proves a *prima facie* case, the person shall bear the burden of producing evidence that an accommodation would impose an undue hardship on that person. If the person produces evidence that an accommodation would

> impose an undue hardship on that person, the person with a disability shall bear the burden of proving by a preponderance of the evidence that an accommodation would not impose an undue hardship on that person.

Mich. Comp. Laws § 37.1210, § 210(1).

Before this Court can address Plaintiff's ability to perform his job, "plaintiff must establish that he is the type of person to which the statute was meant to pertain—a person with a 'disability.'" *Chiles*, 238 Mich. App. at 473. Here, Plaintiff states that he is substantially limited by a diagnoses of hypertrophic cardiomyopathy and doctor's instructions to "avoid excessive lifting, pushing, or pulling and to avoid physical activity to the point of exhaustion." Defendant contends that Plaintiff's complaint should be dismissed because Plaintiff "cannot legally demonstrate that his alleged lifting/pushing/pulling limitations constitute a disability as defined under the Act." The Court agrees that Plaintiff's lifting, pushing, and pulling limitations fail to constitute a "disability" under the Act.

The Act defines "disability" as

> (i) A determinable physical or mental characteristic of an individual which may result from disease, injury, congenital conditions of birth, or functional disorder, if the characteristic:
>
> (A) . . . substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular

6

> job or position or substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's qualifications for employment or promotion.

Mich. Comp. Laws § 37.1103(d)(i)(A). "[The Michigan Court of Appeals] and Michigan Supreme Court note that the federal Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et. seq.*, and the PWDCRA share the same purpose and use similar definitions and analyses." *Chiles*, 238 Mich. App. at 472. "[B]oth courts have relied on the ADA in interpreting the PWDCRA." *Id.* To determine whether a plaintiff has a disability, this Court follows the state's adoption and analyzes the PWDCRA claims under the three-step test created by the ADA to determine whether Plaintiff has a disability:

> First, we consider whether [plaintiff]'s [complaint] was a physical impairment. Second, we identify the life activity upon which [plaintiff] relies . . . and determine whether it constitutes a major life activity under the ADA. Third, tying the two statutory phrases together, we ask whether the impairment substantially limited the major life activity.

*Donahoo*, 282 F. Supp. 2d at 548 (quoting *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)). Major life activities have been defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." *Hawkins v. Genesys Health Sys.*, 704 F. Supp. 2d 688,

7

701(E.D. Mich. 2010) (quoting *Chiles*, 238 Mich. App. at 477 (internal citation and quotation marks omitted)). "Thus, any 'substantial limitation' suffered by an allegedly disabled individual must [be perceived to] relate to one of these activities." *Id.* at 702 (citation omitted). The "substantial limitation" prong of the test has been said to be the most significant factor in limiting the applicability of the PWDCRA to its intended beneficiaries and "[it] is not enough for an impairment to [be perceived to] affect a major life activity, but rather the plaintiff must proffer evidence from which a reasonable inference can be drawn that such activity is [perceived to be] substantially limited." *Id.* (internal citation and quotation marks omitted). In determining whether or not an impairment is "substantial," the Court considers: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or expected permanent or long-term effect. *Id.* The Court notes that it is satisfied that Plaintiff's condition, hypertrophic cardiomyopathy, constitutes a "physical impairment." Defendant argues that Plaintiff cannot demonstrate that his specific medical restrictions "substantially limit any major life activity." Notwithstanding the court's determination that Plaintiff's condition is a "physical impairment," the Court is not persuaded by the information Plaintiff has proffered that it is one that

substantially limits a major life activity. The Court concludes that Plaintiff is not disabled within the meaning of the Act.

### Plaintiff is Not Disabled Within the Meaning of the Act

As previously stated, to make a showing of "disability" within the meaning of the act, Plaintiff must demonstrate that his impairment substantially limits one or more major life activities. Faithful application of a state's law requires federal courts to "anticipate how the relevant state's highest court would rule in the case," and in doing so we are "bound by controlling decisions of that court." In re Dow Corning Corp., 419 F.3d 543, 549 (6th Cir. 2005). Where the Michigan Supreme Court has not directly addressed an issue, "we must predict how the court would rule by looking to all the available data." *Allstate Ins. Co. v. Thrifty Rent-A-Car Sys. Inc.*, 249 F.3d 450, 454 (6th Cir. 2001). Decisions by the Michigan Court of Appeals are binding authority where the Michigan Supreme Court has never addressed the issue. *See Morrison v. B. Braun Med. Inc.*, 663 F.3d 251, 257 n.1 (6th Cir. 2011). Here, though the Michigan Supreme Court has addressed PWDCRA claims generally, *see, e.g.*, *Peden v. City of Detroit*, 470 Mich. 195 (2004) (holding that a police officer who was placed on involuntary disability retirement could not move forward with his PWDCRA claim unless he could perform the functions of his job duties, with or without accommodations), neither

Plaintiff nor Defendants have cited to any case in which the Michigan Supreme Court dealt with the PWDCRA in terms of lifting, pulling, or pushing restrictions as the claimed disability and the Court is unaware of any. The Court is also aware that it should "extremely cautious about adopting 'substantive innovation' in state law." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir.2004). The Court looks to Michigan case law on the issue.

In *Kolpas v. G D Searle & Co.*, 959 F. Supp. 525, 529 (N.D. Ill. 1997), though not binding authority on this Court[1], a plaintiff alleged that her heart condition was a disability under the Act because she could only work a "normal forty-hour week to avoid stress." *Kolpas*, 959 F. Supp. at 529. However, the court held that because the Plaintiff failed to "demonstrate[] that [the] condition left her impaired to the point that she was substantially limited in one or more major life activities," Plaintiff did not have a "disability" as defined by the Act, affording her no relief. *Id.* at 529. Further, the court determined that "the analysis of plaintiff's ability to work must focus on her general capability to function in the general work force." *Id.* at 530. Because Plaintiff admitted that her heart condition did not interfere with her overall ability to work or hold a job, *Id.*, the court determined

---

[1] The Court finds this case persuasive as the relevant facts are closely analogous to those in this case.

that Plaintiff was not "disabled." Likewise, in *Ayer v. Hare Express, Inc.*, 2004 WL 385047 (Jan. 15, 2004) (unpublished), the Michigan Court of Appeals determined that a Plaintiff with a heart condition which limited his ability to comply with the lifting requirement at his job—much like the Plaintiff in the instant case—did not have a "disability" because his lifting restriction of 10 pounds did not "impose substantial limitations on his ability to perform the normal activities of daily living." *Ayer*, 2004 WL 385047, *3.

The Court is also persuaded by the case on which Plaintiff chiefly relies, Michigan Court of Appeals case, *Lown v. JJ Eaton Place*, 235 Mich. App. 721, 732 (1999), but not for the proposition that Plaintiff urges. In *Lown*, a plaintiff underwent surgery after her diagnoses of endometriosis. Following the surgery, the plaintiff was directed by her doctor to not do any heavy lifting or bending until after her one month post-operative check-up. Plaintiff, a prep cook, would occasionally have to lift heavy objects such as bags of carrots or onions or large tubs of dirty dishes and stacks of clean dishes. When plaintiff arrived to work on March 27, 1995, she learned that she would be working in the dish room all day on her own, having to lift more than her limit without assistance. When Plaintiff called her boss to remind him that she was to refrain from heavy lifting, her boss told her that she would have to remain in the dish room because several other

11

employees were out sick. When plaintiff refused, her boss told her to go home and when she returned to work several days later, plaintiff learned that she had been fired. Plaintiff subsequently filed suit against her boss alleging violation of the PWDCRA to which defendants were awarded summary disposition.

On appeal, Lown argued that the trial court erred in granting defendant's motion for summary disposition because, among other things, she suffered from a disability within the meaning of the Act and her disability was unrelated to her ability to perform her job. The Michigan Court of Appeals determined that though "[f]ederal courts . . . have concluded that lifting constitutes a major life activity[,]"[2] "federal courts have held that where the major life activity is lifting, a general lifting restriction, without more, is insufficient to constitute a disability within the meaning of the ADA." *Id.* at 729-30 (citing *Gutridge v. Clure*, 153 F.3d 898, 901 (8th Cir. 1998); *Zarzycki v. United Technologies Corp.*, 30 F. Supp. 2d 283, 289 (D. Conn. 1998)). The *Lown* Court also noted that the Fourth, Fifth, Eighth, and Ninth Circuit Court of Appeals have all held that individuals limited to lifting less

---

[2] In his brief opposing Defendants' motion, Plaintiff cites to Section 1630.2(i) which the court assumes is 29 C.F.R. 1630.2(i)(1)(i), the definition of "Major Life Activities." "Major Life Activities" is defined to include "lifting." The Court appreciates Plaintiff's referencing the definition of "Major life activities" stated in 29 C.F.F. § 1630.2 which lists lifting as a major life activity.. The Court also notes that the ADA's current definition of "Major life activities" includes "lifting."

than twenty-five pounds were not, as a matter of law, disabled. *Id.* at 730. Because Lown failed to meet her burden to establish facts sufficient to show that she was substantially limited in either working or nonworking activities, the Court of Appeals determined she failed to demonstrate that she was disabled within the meaning of the Act. *Id.* at 736.

  Here, Plaintiff argues that he is disabled within the meaning of the act because of the lifting, pushing, and pulling limitations required by his physician. Plaintiff argues that his lifting restriction should qualify as a "major life activity" and he should be granted relief under the Act. The Court notes that even assuming, without deciding, that Plaintiff's lifting restriction is a major life activity within the meaning of the PWDCRA in this case, Plaintiff must also proffer evidence from which a reasonable inference can be drawn that such activity is "substantially limit[ing]." *Donahoo*, 282 F. Supp. 2d at 548. Plaintiff has cited to no cases that lead this Court to believe that his restrictions "substantially limit" him, and, the Court notes, Plaintiff's pleadings seem to reflect the opposite—that Plaintiff is not substantially limited to the point where he can no longer fulfill the requirements of the job to which he was hired. The Court is unpersuaded that, in this specific case, Plaintiff's restrictions—lifting no more than 15 pounds and pushing and/or pulling no more than 20 pounds occasionally and 50 pounds seldomly—imposed the

13

"substantial limitations" on his ability to perform normal activities of daily living required to deem them a "disability" within the meaning of the Act.

Defendants also argue that Plaintiff's Complaint "conclusively establishes that Plaintiff's alleged disability is [not] related to his ability to perform his former job duties as a PSR" and that Plaintiff's complaint "unambiguously requests accommodations that are legally impermissible under the Act." However, because Plaintiff must show all three elements: "(1) []he is 'disabled' as defined by the statute, (2) the disability is unrelated to the plaintiff's ability to perform the duties of a particular job, and (3) the plaintiff has been discriminated against in one of the ways set forth in the statute" to establish a *prima facie* case of discrimination under the PWDCRA, *Donahoo*, 282 F. Supp. 2d at 548 (Chiles, 238 Mich. App. At 473), and Plaintiff fails to satisfy prong one, the Court need not reach the other prongs.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss the Complaint Pursuant to Rule 12(b)(6) **[Docket No. 10, filed June 14, 2013]** is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **DISMISSED**.

**IT IS SO ORDERED**.

S/Denise Page Hood

        Denise Page Hood
        United States District Judge

Dated: March 31, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2014, by electronic and/or ordinary mail.

        S/LaShawn R. Saulsberry
        Case Manager